IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES of AMERICA,

                Plaintiff,

   vs.                                             No. CR 05-2371-01 BB

JOEL BELL,

                Defendant.

**FINDINGS OF FACT**
**AND ORDER FOR RELEASE UNDER CONDITIONS**

THIS MATTER is before the Court on Defendant Joel Bell's ("Bell") opposed motion for bail review.  Bell stipulated to detention at his arraignment so as to allow the Court's Pretrial Services Office to explore the possibility of release to his spouse.  However, due to his spouse's admitted use of methamphetamine and marijuana, she was deemed an inappropriate custodian.  Bell then proposed his mother-in-law, Marqui Thomas, as a third-party custodian.  Ms. Thomas was interviewed by Pretrial Services and found to be an appropriate custodian.  She is employed with Albuquerque Public Schools and resides in Albuquerque.  She expressed a willingness to assist her son-in-law and abide by the Court's conditions of release.

The United States opposes release to a third-party custodian and notes that Bell has been indicted by a federal grand jury on serious drug charges--possession with intent to distribute 50 grams or more of methamphetamine.  Indeed, the crimes charged come within the classification of crimes for which there is a presumption of detention under 18 U.S.C. § 3142.  The United States proffers that at the time of the incident giving rise to the discovery of drugs, law enforcement officers had

responded to a dispute involving Bell and his girlfriend's sister.[1]  When the sister-in-law stated she would call the police due to the abuse, Bell threatened to kill her, and she heard Bell in an adjoining room "rack"or work the slide mechanism of a pump shotgun, and heard what sounded like a round being chambered.  The victim, fearing for her life, fled the residence.

The victim implicated Bell in drug use, manufacture and distribution.  When law enforcement officers arrived, they found a pump shotgun in the living room area where Bell had been at the time he allegedly made the threat to the victim.  However, the shotgun was not loaded and no shotgun shells were found in the immediate area.  Law enforcement officers did find other firearms in the residence, including another loaded shotgun in a gun safe.  Police also found a quantity of methamphetamine and packaging materials, as well as related drug paraphernalia.  The packaged methamphetamines have been linked to Bell by means of fingerprint evidence.

There are presently state criminal proceedings pending against Bell before a state court in Sandoval County arising out of the assault.

Bell proffers that following his initial appearance on the original criminal complaint, Judge Svet was able to fashion terms and conditions of release that would reasonably assure the community that Bell would not be a danger and that he would not flee.  Bell was placed in the La Pasada halfway house and, during the period of the pendency of the original complaint--about one month--he was compliant with terms and conditions of pretrial release.[2]

Subsequently, the original criminal complaint was dismissed and Bell was released from

---

[1]The complainant is now Bell's sister-in-law as Bell has since married his girlfriend.

[2]Bell was at La Pasada from about July 6, 2005 to August 9, 2005, when the original criminal complaint was dismissed without prejudice.  Bell cannot now be placed at La Pasada, as his co-defendant currently resides there and Bell's placement with a co-defendant would violate conditions of release.

custody.  He has since married and relocated with his spouse to the State of Colorado and was residing there when the Grand Jury returned the Indictment in this case on October 25, 2005.

In requesting release, Bell argues that he had been compliant with prior conditions of release, that the charges are essentially the same as previously filed, and that conditions exist that would authorize his release from custody to his mother-in-law's residence in Albuquerque.

The Court disagrees.  The lack of structure and daily overnight with a third-party release makes Bell's proposal untenable.  The circumstances surrounding Bell's threat to kill or otherwise harm his sister-in-law and the use of a weapon during the course of a threat, as well as the pendency of state criminal charges, require far more stringent conditions, if any at all are authorized, than merely third-party custody.

The Court has carefully considered the factors under 18 U.S.C. § 3142(g) and determines that although there is a presumption of dangerousness and therefore a presumption of detention, given the fact that Bell was previously released and was compliant with the terms of release,  conditions can be fashioned that would reasonably assure the Court that Bell will not pose a danger to the community or a risk of flight.

In terms of dangerousness to the community, the pendency of the criminal proceedings against Bell resulting from the domestic dispute with his sister-in-law causes the Court great hesitancy to release Bell at all.  The Court was prepared to deny release altogether.  However, the risk of harm to the victim can significantly be minimized if Bell is released to the custody of the Las Cruces halfway house.  This release will put significant distance between Bell and the victim; it will provide close and personal supervision; it will minimize future drug and alcohol use, and yet allow Bell out of detention.

While the government opposes third-party release, it does not oppose a structured release to the Las Cruces halfway house, believing that a controlled environment will significantly reduce the risk of harm to the community.  The Court agrees.  Given the ongoing state proceedings, Bell's freedom of movement and lack of structure in a third-party release situation, the Court finds Bell's proposal unacceptable.  Bell would be in a position to interfere with or threaten harm to the complainant.

This release will allow Bell to be out-of-custody and further, not in the company of individuals, including his spouse Sidney Rohrbaugh, who have admitted methamphetamine and marijuana drug use and possession.

After careful consideration of the parties' conflicting positions, the Court agrees to release Bell to the Las Cruces halfway house, under the following terms and conditions:

1.  He is to obey all laws federal, state and local;

2.  he is to obey the requirements of the Las Cruces halfway house;

3.  he is not to have contact with the victim in the domestic relations proceeding, nor is he to have any contact with witnesses in the federal proceedings;

4.  he is not to use or possess any alcohol or use or possess any controlled substance which has not been prescribed by a licensed physician;

5.  he is to submit to drug testing and alcohol screens to ensure he is not violating the Court's order;

6.  he is to participate in any mental health evaluation and/or drug treatment as recommended and arranged for by Pretrial Services;

7.  he is to report to a Pretrial Services Officer at the times and at the places that he is directed;

8.  he is to report to his attorney at the times and at the places that he is directed;

9.  he is not to possess any guns, firearms, destructive devices or dangerous weapons; and

10.  he is to report to court for all scheduled hearings.

Defense counsel requested that Bell be immediately released to the custody of his spouse. The Court specifically declines to do this, as Pretrial Services has determined that due to his spouse's drug use, she is not at present a suitable custodian.

If Ms. Rohrbaugh is able to demonstrate in the future that she is drug-free and can overcome the Pretrial Office's concern over "unsuitability," Bell may file a petition for bail review, and the Court will consider a release to her at a later date.  However, due to the concerns of drug use, and in the absence of evidence that she is an appropriate custodian, the Court specifically declines to release Bell to her custody.

The Court directs that Bell remain in custody until such time as satisfactory arrangements can be made to transport him from Albuquerque to the Las Cruces halfway house.

Lorenzo F. Garcia
Chief United States Magistrate Judge